## UNITED STATES DISTRICT COURT
### for the
## NORTHERN DISTRICT OF GEORGIA

ROBERT L. BARKLEY,

                         Plaintiff,        **CIVIL ACTION**

  - against -                 File No.: _____

STACKPATH, LLC, ABRY
PARTNERS, LLC,
CHRISTOPHER TURCO, in his     **COMPLAINT**
individual capacity and as an officer,
director or partner in STACKPATH,  **JURY DEMANDED**
LLC and ABRY PARTNERS, LLC,
and JOHN DOE

                  Defendants

## INTRODUCTION

1. This is an action seeking damages for wrongful termination under the Age Discrimination and Employment Act ("ADEA") and state law claims. Plaintiff Robert Barkley, age 55, was Stackpath's top salesman and responsible for the company's premier client that generates the majority of its revenue. Defendant ABRY Partners, together with Defendants Stackpath, Christopher Turco and John Doe, intentionally conspired and arranged to takeover Defendant Stackpath and terminated Plaintiff because of his age,

replacing him with younger, less experienced, workers.  Defendants' actions

were coldly calculating and intentional and lacked any legitimate business

purpose.  Plaintiff seeks damages under the ADEA, including lost back pay

and front pay, from his unlawful termination.

2.  Plaintiff also seeks damages against Defendant for state law claims

include tortious interference with employment, tortious interference with

contract, and conspiracy.

## PLAINTIFF

3.  Robert L. Barkley resides with his family in Marietta, Georgia, and

voluntarily submits to the jurisdiction of this Court.  Plaintiff was at all

relevant times employed in the State of Georgia as Defendant Stackpath's

senior account manager managing their largest software account from 2006

until his involuntary termination by Defendants.

## DEFENDANTS

4.  STACKPATH, LLC was and is a Delaware limited liability company

whose primary office is located at 200 Crescent Court, Suite 1801, Dallas, TX

75201, and can be served through its registered agent Registered Agent

Solutions, Inc. located at 1701 Directors Boulevard, Suite 300, Austin, TX

78744.  At all relevant times, Defendant Stackpath acted through its officers, employees and agents, including Kip Turco.

5.  CHRISTOPHER ("Kip") TURCO was at all relevant times a member of the Stackpath board of directors, at certain relevant times the Chief Executive Office of Stackpath, and was at all relevant times a partner in Defendant ABRY Partners, residing at 203 Foxpointe Court, Woodstock, GA 30188.  Defendant Turco is sued in his personal capacity, and his capacity as an officer of Defendant Stackpath, LLC and a partner in Defendant ABRY Partners, LLC.

6.  ABRY PARTNERS, LLC ("ABRY Partners") was at all relevant times a Delaware limited liability company whose primary office is located at 888 Boylston, Ste. 1600, Boston, MA 02199, and can be served through its registered agent Corporate Creations Network, Inc., 225 Cedar Hill Street #200, Marlborough, MA 01752.  Defendant Abry Partners, LLC focuses on strategic investment and takeover of other companies as their primary business model.  ABRY Partners has a financial interest, directly or through one or more of its approximately twenty-one subsidiaries and affiliates, in Defendant Stackpath, LLC.

7.  JOHN DOE is, on information and belief, an intermediate person between Defendant ABRY Partners and Defendant Stackpath.  Plaintiff

cannot determine which one or more of Defendant ABRY Partners' twenty-one subsidiaries is involved in the communications with Defendant Stackpath, and/or which individual partners may be personally involved, but expects to establish the identity of Defendant John Doe(s) through initial discovery.

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction under 28 U.S.C. §1331 wherein the case involves matters arising under the Age Discrimination in Employment Act, 29 U.S.C. § 623. (FEDERAL QUESTION)

9.  This Court has subject matter jurisdiction under 28 U.S.C. §1332 wherein the case involves citizens of different states and the amount in controversy exceeds $75,000.  (DIVERSITY JURISDICTION)

10.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1337 affecting matters in state commerce.  (COMMERCE JURISDICTION)

11.     This Court has supplemental subject matter jurisdiction over certain additional state law claims under 28 U.S.C. § 1367. (SUPPLEMENTAL STATE CLAIMS)

12.     Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b) and (c) because all of the events at issue took place in this district and at least one of the parties can be found here.

13.     This Court has personal jurisdiction over Defendant Turco due to his residence in the State of Georgia.

14.     This Court has personal jurisdiction over Defendants Stackpath and ABRY Partners, LLC due to their significant and continuing contacts with the State of Georgia, and that the events at issue took place in the State of Georgia.

FACTS

STACKPATH

15.     Defendant Stackpath is a provider of cloud computing and services provider from servers that it owns and operates in or around the city of Atlanta, Georgia.

16.     According to its current website, Defendant Stackpath purposely "put its locations in densely populated markets" including Atlanta, Georgia.

Complaint for Violation of ADEA
Robert Barkley v. Stackpath, LLC, et al. CAFN: _____
−5−

17.     Stackpath claims to have "dozens of locations that each sit well inside [Atlanta] city limits, rather than a handful of zones that actually sit somewhere out of town."

18.     In order to operate those locations, Stackpath contracts with numerous local Georgia companies to provide server hosting, security, climate control, electricity, broadband service and other related needs.

19.     Defendant Stackpath hosts online games and provides download and other services from its Atlanta servers to thousands of customers in the Atlanta area and the state of Georgia.

20.     In addition, Defendant Stackpath, employs individuals who live and work in Georgia.

21.     Defendant Stackpath's contacts and activities within the state of Georgia are intentional, numerous and continuous.


ROBERT BARKLEY

22.     Plaintiff Robert Barkley is an individual residing in the State of Georgia.

23.     At all relevant times, Plaintiff Barkley was employed in the State of Georgia by Stackpath, and its predecessor Highwinds Software ("Highwinds") prior to its acquisition by Defendant Stackpath.

24.     Plaintiff was hired in July 2006 to market and develop Highwinds' relationship with large gaming software companies.

25.     All of Plaintiff's duties for Highwinds, except when he occasionally travelled out of state, were performed in the state of Georgia and he filed income taxes in the State of Georgia.

26.     Shortly after he joined the company, Steve Miller, the then-chief executive officer, assigned him the exclusive duty of cultivating business with a specific customer who made online gaming software. For reasons of confidentiality, the customer will be called "Spigot".

27.     Through Plaintiff's effort, the Spigot account flourished and grew steadily.

28.     Steve Miller was delighted with Plaintiff's performance and told him many times to just keep doing what he was doing. Plaintiff remained in his role as Spigot account manager during his tenure at Highwinds.

29.     When Stackpath, LLC acquired Highwinds Network Group in February of 2017, Plaintiff continued in his same role, but now as a Stackpath employee. Steve left with the acquisition, and after that Plaintiff worked closely with Lance Crosby, the CEO and co-founder of Stackpath. Lance directed Plaintiff to continue developing the Spigot account as he had been doing, and not to worry about anything else.

30.    Plaintiff's only assigned responsibility, from Lance, was to keep managing the Spigot relationship.

31.    All of Plaintiff's duties, except when he occasionally travelled out of state, continued to be performed in the state of Georgia and he filed income taxes in the State of Georgia.

32.    Over time Plaintiff was extremely successful in growing the Spigot account, which increased during his tenure from the original $500 per month order to between $2,000,000 to $3,000,000 per month.   At all relevant times, Spigot was far and away Stackpath's single largest customer.

33.    Like Highwinds, Stackpath never assigned Plaintiff any specific sales goals or quotas.  With his strong performance he was given wide latitude to exercise his own judgment in developing company business.

34.    In about 2018-2019 Plaintiff went to the chairman and identified a new potential customer, which shall be called "Rocks" for confidentiality reasons, and with his approval Plaintiff went and talked to Rocks.

35.    From this first meeting, a strong relationship with Rocks grew which culminated in Rocks becoming a Stackpath customer, and eventually making a substantial investment in the company.

36.    The Rocks account was forecasted by Stackpath executives to grow exponentially.

Complaint for Violation of ADEA
Robert Barkley v. Stackpath, LLC, et al. CAFN: _____
−8−

37.     With the success of the nascent Rocks relationship Plaintiff was able to cultivate a business relationship with another new client, who will be called "Shrub".

38.     Shrub also became a Stackpath customer and made an equity investment in the company.

39.     During all of Plaintiffs' employment with Highwinds and its successor Stackpath, he was never given a written job description at either company.

40.     During all of Plaintiffs' employment with Highwinds and its successor Stackpath, he was never assigned sales targets, nor assigned specific performance objectives.

41.     During all of Plaintiffs' employment with Highwinds and its successor Stackpath, he never received a negative performance review at either company, and was never disciplined for any infraction, or put on a performance improvement plan.

42.     During all of Plaintiffs' employment with Highwinds and its successor Stackpath, neither CEO, nor anyone at either company, ever expressed dissatisfaction to him with his efforts.

43.     Both CEOs were completely satisfied and supportive of his proven ability to increase the value and volume of business with Spigot.

## ABRY PARTNERS

44.  ABRY Partners is a private equity investor group that makes strategic investments in companies that it targets for later takeover.

45.  ABRY Partners held an ownership interest in Stackpath at the time of the latter's acquisition of Highwinds and maintained at least one seat on the Stackpath board of directors.

46.  Defendant Turco, a member of ABRY Partners, has occupied ABRY Partners' seat on the Stackpath board of directors since its acquisition of Highwinds.

47.  Defendant Turco became aware of the terms of Plaintiff's contract under which he was to receive a substantial equity participation in any sale of Defendant Stackpath and its affiliates.

48.  On information and belief, Defendant Turco discussed Plaintiff's contract, under which he had a right to participate in any equity transaction, with Defendant ABRY Partners.

49.  On information and belief, Defendant ABRY Partners encouraged and instructed Defendants Turco and Stackpath to terminate Plaintiff and his right to participate in an equity transaction.

## COUNT ONE

### 29 U.S.C. § 623
### AGE DISCRIMINATION

50. As a result of the issuance of equity interests to Rocks and Shrub, Lance Crosby lost what had previously been a controlling interest in Stackpath, LLC.

51. On information and belief, Defendant Turco and Defendant ABRY Partners both harbor beliefs that older workers do not present value in the "gig economy."

52. Seizing upon the opportunity presented by the Rocks and Shrub investments, in January of 2020 Defendant ABRY intervened to have the Stackpath board replace Lance Crosby as CEO of the company with one of Defendant ABRY's own partners, Defendant Kip Turco.

53. Defendant Turco was substantially younger than Lance, who was already over fifty at the time of the transaction.

54. On information and belief, to be further developed in discovery, shortly following Lance's termination, Defendants Stackpath and Turco, with the knowledge and approval of Defendant ABRY Partners, identified Plaintiff to be replaced with a younger worker more fitting their perceptions.

55.     On information and belief, Defendants Stackpath and Turco, with

the knowledge and approval of Defendant ABRY Partners, identified other

senior Stackpath employees to be replaced with a younger worker more

fitting their perceptions of the "gig economy"

56.     Shortly thereafter Plaintiff began to hear comments from other

workers in the company about the "old guard" and perceived Defendant Kip's

intention to replace several of the existing older managers with younger

people.

57.     Defendant Stackpath terminated several senior employees and

officers who were over the age of forty and replaced them with younger

individuals.

58.     Shortly thereafter, Defendant Turco abruptly, and without prior

notice, fired the Plaintiff from his employment with Defendant Stackpath.

59.     Plaintiff's termination was an adverse employment action.

60.     Defendants Turco and Stackpath brought in Justin Grindstaff,

approximately 38, to take over nearly all the commercial aspects of the

customer manager of the Spigot account.

61.     Justin Grindstaff was a substantially younger person who filled

the position from which Plaintiff had been discharged.

62.     Defendants Stackpath and Turco intentionally disguised and misrepresented the basis for Plaintiff's abrupt termination.

63.     Defendants Stackpath and Turco generated and disseminated a completely false story that Plaintiff had not generated new clients for the company.

64.     In reality Plaintiff was never assigned the responsibility to generate new client clients for the company.

65.     Despite that, Plaintiff brought in several new clients to Stackpath, two of not only became customers, but wound-up making equity investments in the company.

66.     Contrary to Defendants' manufactured story, Plaintiff's performance was not deficient.

67.     Prior to his abrupt termination, Plaintiff's performance had never been questioned by either prior chief executive officer, by Defendant Turco, or by any other senior manager of Stackpath or Highwinds.

68.     Stackpath never notified Plaintiff that his performance was unsatisfactory.

69.     Defendant Stackpath never presented Plaintiff with a performance improvement plan outlining any deficient performance and identifying areas for improvement.

70.    Defendants claim that Plaintiff had not brought in additional customers was factually false, and a mere pretext to disguise the real purpose of his termination.

71.    At the time of his termination, Plaintiff was fully qualified to the do the job from which he was discharged.

72.    In reality, Plaintiffs' termination was due to his being over fifty years of age and Defendants' mistaken perception that older workers had no continuing value in the "gig economy".

73.    Since his termination, Plaintiff has remained unemployed and unable to find work paying comparable compensation.

74.    As the actual and proximate cause of his termination from Stackpath, Plaintiff suffered damages including loss of substantial past income, lost future income, permanent damage to his earning ability, and other damages.

## COUNT TWO

Georgia State Law Claim
Intentional Interference with Employment

75.     Plaintiff was employed with Defendant Stackpath, and its predecessors, from 2006 to the date of his termination in March of 2020.

76.     Defendant ABRY Partners, LLC was a stranger to Plaintiff's employment relationship with Stackpath, LLC.

77.     During his employment with Defendant Stackpath, Plaintiff competently met and discharged all the duties and responsibilities of his position as account manager for the Spigot account.

78.     During his employment with Defendant Stackpath, Plaintiff was never reprimanded.

79.     During his employment with Defendant Stackpath, Plaintiff was never assigned any specific job performance criteria.

80.     Defendant ABRY Partners intentionally and wrongfully interfered with Plaintiff's employment by causing one of its partners, Defendant Turco, to terminate Plaintiff's employment with Defendant Stackpath on meritless and unfounded claims.

81.     As a result of Defendant ABRY Partners' actions, Plaintiff lost his job, his income, and his benefits of employment, and was out of work for a considerable period of time.

82.     Defendant ABRY Partners' actions were taken maliciously and without privilege.

83.    Defendant ABRY Partners' action was the actual and proximate cause of Plaintiff's termination from Stackpath.

84.    As the result of his termination from Stackpath, LLC, Plaintiff suffered damages including loss of substantial past income, lost future income, permanent damage to his earning ability, and other damages.

## COUNT THREE

### Georgia State Law Claim
### Intentional Interference with Contract

85.    Stackpath Incentive, LLC is an affiliate of Defendant Stackpath.

86.    Stackpath Incentive, LLC was formed in order to hold a member interest in Stackpath, LLC, and grant employees of Stackpath, LLC participation in the value of the Stackpath equity interest under certain conditions.

87.    The equity interests become negotiable/transferrable upon the sale of Stackpath, LLC or Stackpath Incentive, LLC and certain other events specified in the written agreement.

88.    The right to participate in the equity interests terminates if the Stackpath employee to whom they are issued ceases to be an employee.

89.     Plaintiff and Stackpath Incentive, LLC were parties to that certain Class M Unit Grant Agreement ("Equity Incentive Agreement") dated June 28, 2017.

90.     Defendants Turco, Stackpath, and ABRY Partners were and are strangers to the Equity Incentive Agreement between Plaintiff and Stackpath Incentive, LLC.

91.     Under the terms of the Equity Incentive Agreement, Plaintiff was issued 125 Class M-1 Units, 125 Class M-2 Units, 125 Class M-3 Units, 125 Class M-4 Units, 125 Class M-5 Units, 125 Class M-6 Units, 125 Class M-7 Units, 125 Class M-8 Units in Stackpath Incentive, LLC.

92.     Plaintiff's Class M Units all had tangible value that would have vested if Plaintiff had remained in Stackpath's employment.

93.     While he was a board member and/or executive officer of Defendant Stackpath, Defendant Turco became aware of the existence of Plaintiff's Equity Incentive Agreement and its terms.

94.     On information and belief, Defendant Turco communicated the existence and terms of Plaintiff's Equity Incentive Agreement to Defendant ABRY Partners directly or through its partners, officers, agents, subsidiaries or affiliates.

95. Defendant ABRY Partners, directly or through its partners, officers, agents, subsidiaries or affiliates, communicated to Defendants Turco and Stackpath that they should terminate Plaintiff's Equity Incentive Agreement.

96. Defendants ABRY Partners, Turco and Stackpath reached agreement to terminate Plaintiff's Equity Incentive Agreement.

97. Defendant ABRY Partners prevailed upon and caused Defendants Stackpath and Turco to terminate Plaintiff from his employment with Stackpath, LLC.

98. The purpose of Defendants ABRY Partners, Turco, and Stackpath in terminating Plaintiff's Equity Agreement was to prevent his incentive units from vesting and enhancing Defendants' own financial advantage.

99. Defendant Turco, as agent of Defendant ABRY Partners, terminated Plaintiff from his employment with Stackpath, LLC on false claims of nonperformance.

100. As a result of being terminated, Plaintiff's right to vesting of his Class M Units terminated, and he is no longer eligible to an equity participation in the event of the sale of Stackpath, LLC.

101.   As the result of his Equity Incentive Agreement being terminated by Defendant ABRY Partners, Plaintiff suffered damages including loss of substantial past income, lost future income, permanent damage to his earning ability, and other damages.

## COUNT FOUR

### Georgia State Law Claim

### Civil Conspiracy Under Georgia Law

102.   During his employment with Defendant Stackpath, Plaintiff held contractual rights under an Equity Incentive Agreement entitling him to certain compensation in the event of a sale or other transaction involving Defendant Stackpath.

103.   Defendants Turco, Stackpath, and ABRY Partners anticipated and intended to sell or transfer their ownership interests in Defendant Stackpath.

104.   Defendants Turco, Stackpath and ABRY Partners did wrongfully combine, and on information and belief communicated with each other on one or more occasion, to tortiously interfere with Plaintiff's contractual rights under the Equity Incentive Agreement.

105.   Defendants Turco, Stackpath and ABRY Partners entered into a common design whereby they, either positively or tacitly, arrived at a mutual understanding to deny and interfere with Plaintiffs' contractual right to an equity participation in Defendant Stackpath by cancelling and terminating his Equity Incentive Agreement.

106.   As a result of his Equity Incentive Agreement being terminated, Plaintiff's right to vesting of his Class M Units terminated, and he is denied his contractual rights under the Equity Incentive Agreement to equity participation in the event of the sale or other similar transaction involving Stackpath, LLC.

107.   As a result of the termination of his Equity Incentive Agreement, Plaintiff has been damaged, to wit, he has lost the amount of income he would have received upon a sale or similar transaction involving Stackpath, LLC.

108.   Defendants are jointly and severally liable for the acts of each other taken in furtherance of the foregoing conspiracy.

DAMAGES

109.   Defendants' conduct described in Count One and the facts of this Complaint was willful within the contemplation of the Age Discrimination in Employment Act.

110.   As a result of Defendants' conduct described herein, Plaintiff suffered damages, including loss of employment, lost income from employment, lost future income from employment, lost commissions on the accounts he handled, lost employment benefits, damage to his prospective earning ability, loss of his equity participation in a sale or similar transaction involving Defendant Stackpath, and attorney fees and expenses.

111.   Plaintiff is entitled to liquidated damages under the ADEA for Defendants' willful conduct.

112.   The Defendants' conduct described in this complaint was the cause in fact and the proximate cause of the Plaintiffs' injuries.

113.   As the result of Defendants' conduct described in Counts Two, Three and Four, Plaintiff has suffered damages including lost past and future income, a lost equity interest in Defendant Stackpath and third party Stackpath Incentive, LLC, mental pain and suffering, anxiety, humiliation, shock and diminished capacity to work and earn money.

114.   With respect to Counts Two, Three and Four, Defendant's actions evince willful misconduct, malice, fraud, wantonness, oppression, or that

entire want of care which would raise the presumption of conscious

indifference to consequences which actions entitle Plaintiffs to punitive

damages pursuant to O.G.G.A. § 51-12-5.1 in an amount to be determined at

trial.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and

severally, for:

      a. $7,500,000.00 in compensatory damages;
      b. $350,000.00 in punitive damages;
      c. Reasonable attorney fees, if any;
      d. Costs of suit;
      e. Interest; and
      f. Any other and further relief that the Court may deem just and
         proper.

Trial by Jury is demanded on all issues so triable.

Dated: September 10, 2021

                        David E. Oles, Sr.
                        Attorney for Plaintiff
                        Georgia Bar No. 551544
                        5755 Northpoint Parkway
                        Suite 25
                        Alpharetta, GA 30022
                        (770) 753-99995
                        firm@deoleslaw.com