IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBERT L. BARKLEY,
     Plaintiff,

v.

STACKPATH, LLC, et al.,
     Defendants.

CIVIL ACTION NO.
1:21-cv-3763-JPB-CMS

## **NON-FINAL REPORT AND RECOMMENDATION**

The Second Amended Complaint is before the Court on the motion to dismiss filed by defendants StackPath, LLC ("StackPath"), ABRY Partners, LLC ("ABRY Partners"), and Christopher Turco (collectively "Defendants"). [Doc. 24-1, Motion to Dismiss Second Amended Complaint]. In this case, Plaintiff Robert L. Barkley raises one federal claim for age discrimination in employment under the Age Discrimination in Employment Act ("ADEA"), and three state law claims for tortious interference with employment, tortious interference with contract, and civil conspiracy. [Doc. 23, "Second Am. Compl."]. The crux of Plaintiff's Second Amended Complaint is that StackPath, his former employer, wrongfully terminated his employment due to his age, and that as a result, he lost income and contractual stock rights. [*Id.* ¶¶ 50, 58]. In their motion, Defendants assert that the only

arguably viable claim Barkley has stated is an ADEA claim against his former employer, StackPath, and that all other claims should be dismissed.[1]   [Doc. 13].

## I.   FACTS STATED IN THE SECOND AMENDED COMPLAINT[2]

According to the Second Amended Complaint, Barkley was working for Highwinds Software as an account manager when the company was acquired by Defendant StackPath in February 2017.   [Second Am. Compl.   ¶¶ 24, 29].   After the acquisition, Barkley began working closely with StackPath's CEO and founder, Lance Crosby.   [*Id.* ¶ 29].   At Crosby's direction, Barkley's only responsibility was to manage the relationship with StackPath's largest customer, a gaming software company ("Company 1").   [*Id.* ¶¶ 26, 29, 30, 32].

---

[1] After the Defendants moved to dismiss the First Amended Complaint [Doc. 13], Barkley sought leave to file a Second Amended Complaint [Doc. 17].   I allowed him to file it, and the parties agreed that the motion to dismiss did not need to be re-briefed because all of the arguments they had previously made with respect to the First Amended Complaint applied equally to the Second Amended Complaint.   [*See* Docs. 6, 22, 24].   At my instruction, the Defendants have filed a short motion to dismiss the Second Amended Complaint in which they incorporate all their previous arguments.   [Doc. 24-1 (hereinafter, "Motion to Dismiss")].   As such, there are now six briefs to be considered—three for the motion to dismiss the First Amended Complaint [Docs. 13, 16, 18] and three relating to the handful of new allegations in the Second Amended Complaint.   [Docs. 17, 20, 21].

[2] These facts are taken from the Second Amended Complaint and are accepted as true for purposes of evaluating the merits of Defendants' Motion to Dismiss.   *See Karantsalis v. City of Miami Springs*, 17 F.4th 1316, 1319 (11th Cir. 2021).

Barkley asserts that he performed his job well, never received a negative performance review, and was never disciplined.   [Second Am. Compl. ¶ 41].  Moreover, he grew the Company 1 account dramatically, and he also recruited two substantial new customers for StackPath.  [*Id.*  ¶¶ 32, 34, 35, 37, 38].

In January 2020, the StackPath board replaced Crosby with Defendant Turco as CEO.  [Second Am. Compl.  ¶ 52].  Turco was a partner/member in Defendant ABRY  Partners,  a  private  equity  investor  group  that  has  a  financial interest/ownership interest in StackPath.  [*Id.* ¶¶ 5, 6, 44–46].  After Turco became the CEO, Barkley heard comments referring to older workers as "old guard," and Barkley perceived that Turco intended to replace older managers with younger people.  [*Id.* ¶ 56].

As part of his employment with StackPath, Barkley was party to an Equity Incentive  Agreement  dated  June  28,  2017  with  a  StackPath  affiliate  named StackPath Incentive, LLC ("StackPath Incentive").  [Second Am. Compl. ¶¶ 85, 89, 102].  The Equity Incentive Agreement provided that Barkley would receive a "substantial equity participation in any sale" of either StackPath or StackPath Incentive and "certain other events specified" in the agreement.  [*Id.* ¶¶ 47, 87, 89]. Pursuant to the Equity Incentive Agreement, Barkley was issued Class M stock that would have vested if he had remained a StackPath employee.  [*Id.* ¶¶ 91, 92].  In

March 2020, Barkley's employment was terminated, allegedly because of his age, and Justin Grindstaff, who was only thirty-eight, took over Barkley's responsibilities. [*Id.* ¶¶ 1, 3, 58, 60, 75]. Barkley alleges that Defendants "anticipated and intended to sell or transfer their ownership interests" in StackPath, and they "reached [an] agreement" to terminate Barkley's employment in order to terminate his right to vesting of his Class M stock. [*Id.* ¶¶ 93, 94, 96–99, 103]. According to Barkley, ABRY Partners, StackPath, and Turco "generated and disseminated a completely false story that Plaintiff had not generated new clients for the company." [*Id.* ¶ 63]. Barkley alleges that this "story" was not true because (1) generating new clients was not part of his responsibilities and (2) he did, in fact, bring in new clients. [*Id.* ¶¶ 64, 65].

## II.   <u>DISCUSSION</u>

Before I begin my analysis, I note that in federal court, each count in a complaint must plainly, clearly, and concisely identify the defendant(s) to which it is directed, the factual basis for that defendant's liability, and the relief the plaintiff seeks. Fed. R. Civ. P. 8(a)(2). The Second Amended Complaint fails in this regard. It is not clear which count is directed to which of the various defendants.[3]  In drafting

---

[3] Moreover, several paragraphs use the word "Defendant" in the singular, with no context for the reader to determine who Barkley is referring to.  For example,

this Report and Recommendation, I have done my best to determine which counts are intended to be directed to which defendant(s) and have made recommendations accordingly.

### A. Count One—ADEA

In Count One of the Second Amended Complaint, Barkley brings a claim under the ADEA.  It appears that he intends to assert this claim against all Defendants.  In their Motion to Dismiss, Defendants do not challenge the sufficiency of the ADEA allegations against StackPath, the former employer.  Rather, they argue that there can be no ADEA claim against the other two defendants—Turco and ABRY Partners.  I agree.

The relief granted under the ADEA is against the employer only.  *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995).  In the Second Amended Complaint, Barkley repeatedly alleges that he was employed by StackPath.  [Second Am. Compl. ¶¶ 23, 29, 39–42, 58, 75–81, 97, 102].  He does not allege that ABRY

---

Barkley states that he "seeks damages against Defendant for state law claims include [sic] tortious interference with employment, tortious interference with contract, and conspiracy."  [Second Am. Compl. ¶ 2].  He also alleges that "Defendant's actions evince willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care . . . ."  [*Id.* ¶ 114].

Partners was his employer. In fact, Barkley alleges that ABRY Partners "was a stranger to Plaintiff's employment relationship with StackPath, LLC." [*Id.* ¶ 76].

After receiving Defendants' motion to dismiss the first amended complaint, Barkley apparently recognized this deficiency in his pleading and added the following allegation:

> On information and belief, Defendant ABRY Partners exercises extensive control over Defendant Stackpath such that Defendant Stackpath acted as the mere agent and instrumentality of Defendant ABRY Partners when it terminated Plaintiff.

[Second Am. Compl. ¶ 49]. In doing so, Barkley attempts to take advantage of the legal theory whereby two or more ostensibly separate entities may be treated as a single integrated enterprise for purposes of the employment discrimination laws. *See Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir. 1999). The facts, however, do not support this legal conclusion. Barkley alleges that: (1) ABRY Partners has an ownership interest in StackPath; (2) ABRY Partners has one seat on the StackPath board of directors; (3) ABRY Partners used its influence to replace StackPath's CEO with one if its members; and (4) ABRY Partners "encouraged and instructed" StackPath to terminate Barkley's employment. [Second Am. Compl. ¶¶ 6, 45, 46, 49, 52]. Even accepting these facts as true, they fall far short of plausibly alleging that StackPath was a "mere agent and instrumentality" of ABRY Partners. [Second Am. Compl. ¶ 49]. As such, the allegation is insufficient to state

a plausible claim against ABRY Partners. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (holding that the Court must eliminate any allegations that are merely legal conclusions when determining if a claim has facial plausibility to survive a motion to dismiss). In the absence of facts to show that ABRY Partners was Barkley's employer (or joint employer), the ADEA claim against ABRY Partners should be dismissed.

With respect to Defendant Turco, it is well settled there is no individual liability under the ADEA. *Tobar v. Federal Defenders Middle Dist. of Ga., Inc.*, 618 F. App'x 982, 985 n.2 (11th Cir. 2015) ("The district court correctly dismissed Roseberry from the lawsuit because there is no individual liability under the ADEA or the ADA."). Accordingly, to the extent Barkley intended to assert an ADEA claim against Turco, it should also be dismissed.

### B. Count Two—Tortious Interference with Employment

In Count Two of the Second Amended Complaint, Barkley alleges that ABRY Partners "intentionally and wrongfully interfered with [his] employment by causing one of its partners, Defendant Turco, to terminate his employment with Defendant

StackPath . . . ." [Second Am. Compl. ¶¶ 76, 80]. It appears that this claim is intended to be asserted against ABRY Partners only.[4]

"The elements of a claim for tortious interference with employment include the existence of an employment relationship, interference by one who is a stranger to the relationship, and resulting damage to the employment relationship." *Lee v. Gore*, 472 S.E.2d 164, 167 (Ga. Ct. App. 1996). Defendants argue, among other things, that this claim should be dismissed because none of the Defendants were strangers to Barkley's employment relationship.

Although Plaintiff makes the conclusory allegation that "Defendant ABRY Partners, LLC was a stranger to Plaintiff's employment relationship with Stackpath, LLC," the Second Amended Complaint alleges that ABRY Partners was a financial investor in StackPath (the employer) and held a seat on its board of directors. [Second Am. Compl. ¶ 45]. As such, ABRY had an economic interest in the employment contract between StackPath and Barkley. Under Georgia law, when a

---

[4] Indeed, no such claim could be asserted against the other two defendants. StackPath was Plaintiff's employer, and Turco was StackPath's CEO. [Second Am. Compl. ¶¶ 23, 52]. Thus, they had authority to terminate Plaintiff's employment and could not have tortiously interfered with his employment. *See Miles v. Bibb Co.*, 339 S.E.2d 316, 318 (Ga. Ct. App. 1985) (holding that because the plaintiff's employment was terminable at will and he was discharged by one with authority to do so, no claim for tortious interference with employment could be maintained).

company has a financial interest in one of the parties to an employment relationship, that company is not a stranger to the contract. *See Dalton Diversified, Inc. v. AmSouth Bank*, 605 S.E.2d 892, 898 (Ga. Ct. App. 2004); *Britt/Paulk Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc.*, 952 F. Supp. 1575, 1584 (N.D. Ga. 1996) (concluding that a defendant is not a stranger when "the defendant would benefit economically from the alleged injured relations" or "both the defendant and the plaintiff are parties to a comprehensive interwoven set of contracts or relations."). Because ABRY Partners had a financial interest in StackPath, the tortious interference with employment claim against ABRY Partners should be dismissed. *See Dalton Diversified, Inc.*, 605 S.E.2d at 898; *SIS, LLC v. Stoneridge Holdings, Inc.*, 2019 WL 8277244, at *7 (N.D. Ga. Feb. 5, 2019) (granting motion to dismiss on tortious interference claim where defendants benefitted from the contract and relationship between plaintiff and plaintiff's customer); *Lee v. Caterpillar Inc.*, 2011 WL 13176333, at *6 (N.D. Ga. Dec. 2, 2011) (granting motion to dismiss where there was an interwoven business relationship between plaintiff, defendant, and plaintiff's employer).

### C. Count Three—Tortious Interference with Contract

In Count Three, Barkley alleges a claim for "Intentional Interference with Contract" against all Defendants based on their alleged interference with his contract

with StackPath Incentive.  [Second Am. Compl. ¶¶ 85–101].  The elements of a claim for tortious interference with contract are: "(1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations . . . ; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 644 S.E.2d 440, 446 (Ga. Ct. App. 2007).

Here, Barkley appears to be alleging that StackPath, ABRY Partners, and Turco all tortiously interfered with his stock contract with StackPath Incentive.  The Second Amended Complaint alleges that there were two parties to the Equity Incentive Agreement—Barkley and StackPath Incentive.  Noticeably absent from the Second Amended Complaint is any allegation that StackPath Incentive breached the Equity Incentive Agreement.  Based on the allegations in the Second Amended Complaint, Barkley's contractual rights under the Equity Incentive Agreement existed only so long as he "remained in StackPath's employment."  [Second Am. Compl. ¶¶ 92, 100].  Thus, based on the allegations in the Second Amended Complaint, Barkley's loss of rights under the agreement was based on the agreed-upon provisions of the agreement; after Barkley was terminated, he was no longer entitled to participate in the stock plan.  By failing to allege that anyone breached

any provision of the Equity Incentive Agreement, Barkley has failed to state a plausible claim for tortious interference with contract under Georgia law.  *See APA Excelsior III, L.P. v. Windley*, 329 F. Supp. 2d 1328, 1365 (N.D. Ga. 2004) (noting that under Georgia law, "[w]here there is no breach of a contract, this claim will not lie.").

### D. Count Four—Civil Conspiracy

Finally, in Count Four, Barkley alleges that Defendants engaged in a civil conspiracy to tortiously interfere with his contractual right to an equity participation in StackPath by terminating his employment and thereby cancelling his rights in the Equity Incentive Agreement.  [Second Am. Compl. ¶¶ 102–108].  "Civil conspiracy is not an independent cause of action; there must be an underlying wrong on which the conspiracy claim is based."  *See Nance v. Maxwell Fed. Credit Union (MAX)*, 186 F.3d 1338, 1342–43 (11th Cir. 1999).  Such a claim cannot be based on a violation of the ADEA.  *Id.* (affirming the dismissal of a state-law conspiracy claim premised upon a violation of the ADEA).  The Eleventh Circuit instructs that plaintiffs may not make an "end run" around the complex federal statutory structure

for age discrimination suits by raising state-law conspiracy claims in ADEA cases. *Id.* Accordingly, this claim should also be dismissed.

### E. Defendant "John Doe"

Defendants also argue that any claims against "John Doe" should be dismissed because, generally speaking, fictitious-party pleading is not permitted in federal court. [Doc. 13 at 16]. Defendants are correct. Here, Barkley fails to sufficiently describe Defendant John Doe in his Second Amended Complaint, offering no description or job title, instead describing Doe as "an intermediate person between Defendant ABRY Partners and Defendant StackPath." [Second. Am. Compl. ¶ 7]. This description is too vague to enable anyone to identify Doe. As such, the claims against this person should be dismissed. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010); *Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020) (affirming dismissal of John Doe defendants where plaintiff failed to provide descriptions or "include[d] only general physical attributes and a title that is held by many individuals"); *Smith v. Comcast Corp.*, 786 F. App'x 935, 939 (11th Cir. 2019); *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992) (noting a limited exception to the rule that fictitious pleadings are not permitted where the plaintiff's

description of the defendant is "sufficiently clear to allow service of process."). For this reason, I will recommend that the claims against John Doe be dismissed.

### III.   **CONCLUSION**

For the reasons stated, I **RECOMMEND** that Defendants' Motion to Dismiss all claims in Plaintiff's Second Amended Complaint except for the ADEA claim against StackPath [Doc. 24-1] be **GRANTED** and that ABRY Partners, Turco, and "John Doe" be **TERMINATED** as parties.   I further **RECOMMEND** that Defendants' Motion to Dismiss the First Amended Complaint [Doc. 13] be **DENIED AS MOOT**.[5]

**SO REPORTED AND RECOMMENDED**, this 20th day of January, 2022.

Catherine M. Salinas
United States Magistrate Judge

---

[5] If the district judge agrees with this recommendation, the only claim remaining will be the ADEA claim against StackPath.

13