UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBERT L. BARKLEY,

     Plaintiff,

    v.

STACKPATH, LLC, et al.,

     Defendants.

CIVIL ACTION NO.
1:21-CV-03763-JPB

## ORDER

This matter is before the Court on the Magistrate Judge's Non-Final Report

and Recommendation [Doc. 25]. This Court finds as follows:

### FACTS AND PROCEDURAL HISTORY

This case arises from Robert Barkley's ("Plaintiff") employment as a senior

account manager with StackPath, LLC. [Doc. 23, p. 2]. Plaintiff's employment

began in 2006 and continued until he was terminated in 2020. Id. at 6, 12. At the

time of Plaintiff's termination, Christopher Turco was the Chief Executive Officer

("CEO") of StackPath. Id. at 3. Turco was also a partner at ABRY Partners, a

private equity firm that held an ownership interest in StackPath. Id. at 3, 10.

Alleging that he was fired because of his age, on September 10, 2021,

Plaintiff brought suit against StackPath, Turco and ABRY Partners (collectively,

"Defendants"). [Doc. 1]. The Second Amended Complaint, which is the operative complaint, sets forth the following causes of action: (1) Age Discrimination in violation of the Age Discrimination and Employment Act ("ADEA"); (2) Intentional Interference with Employment; (3) Intentional Interference with Contract; and (4) Civil Conspiracy. [Doc. 23, pp. 11, 15, 16, 19].

Defendants filed their Motion to Dismiss on October 22, 2021.[1] [Doc. 13]. With the exception of the ADEA claim asserted against StackPath, Defendants argued that all counts should be dismissed. Id. at 3. On January 20, 2022, United States Magistrate Judge Catherine M. Salinas issued a Non-Final Report and Recommendation wherein she recommended granting Defendants' motion. [Doc. 25]. Plaintiff filed objections to the recommendation on February 17, 2022, and February 18, 2022. [Docs. 29 and 30].[2]

## LEGAL STANDARD

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447

---

[1] Defendants' Motion to Dismiss actually pertains to Plaintiff's First Amended Complaint. Instead of filing a new motion to dismiss, the parties agreed that the Motion to Dismiss did not need to be refiled and could be considered as to the Second Amended Complaint. [Doc. 25, p. 2 n.1].
[2] The objections appear to be identical other than a downward shift in the case caption and a proper citation to the Second Amended Complaint in the final paragraph of the objection.

U.S. 667, 680 (1980).  Pursuant to 28 U.S.C. § 636(b)(1), a court reviews any portion of the Report and Recommendation that is the subject of a proper objection on a *de novo* basis, and it reviews any non-objected-to portion under a "clearly erroneous" standard.  Notably, a party objecting to a recommendation "must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court."  Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).  It is reasonable to place this burden on the objecting party because "[t]his rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act."  United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009).

## DISCUSSION

Plaintiff raises five different objections to the Magistrate Judge's Non-Final Report and Recommendation.  Each objection is discussed below.

1. Objection One:  The Standard of Review

In his first objection, Plaintiff contends that the Magistrate Judge failed to apply the proper standard of review when issuing her recommendation on the Motion to Dismiss.  More specifically, Plaintiff asserts that the Magistrate Judge "improperly inferred factual allegations in favor of the defendant, rather than the

plaintiff, and the Report appears to reflect a belief that the claims are improbable rather than merely a consideration of whether they are plausible." [Doc. 29, p. 2].

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Traylor v. P'ship Title Co., 491 F. App'x 988, 989 (11th Cir. 2012). Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement. Id. Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted). At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," id., and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at 678). While all well-pleaded facts must be accepted as true and construed in the

light most favorable to the plaintiff, <u>Powell v. Thomas</u>, 643 F.3d 1300, 1302 (11th Cir. 2011), a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, <u>Iqbal</u>, 556 U.S. at 678.

Accordingly, evaluation of a motion to dismiss requires two steps:  (1) a court must eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are remaining well-pleaded factual allegations, a court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Iqbal</u>, 556 U.S. at 679.

After reviewing the Report and Recommendation, the Court finds no indication that the Magistrate Judge failed to apply the standard of review identified above.  Indeed, the Magistrate Judge explicitly set forth the correct standard and expressly stated in her recommendation that the facts from Plaintiff's Second Amended Complaint were accepted as true.  Moreover, the Magistrate Judge explained why the facts, even construed in the light most favorable to Plaintiff, required dismissal.  Significantly, Plaintiff fails to identify which factual allegations the Magistrate Judge purportedly inferred in favor of Defendants, making this objection an improper general objection.  Ultimately, the Court finds that the Magistrate Judge applied the proper standard of review, and therefore the objection is **OVERRULED**.

2. Objection Two:  The ADEA Claim

Plaintiff's second objection pertains to his ADEA claim.  The Magistrate

Judge recommended dismissing this claim as to ABRY Partners and Turco because

Plaintiff failed to sufficiently allege that either was his employer.

    a.  ABRY Partners

Plaintiff contends that ABRY Partners is liable under the ADEA because

ABRY Partners exercised such control over StackPath that StackPath was a mere

agent or instrumentality of ABRY Partners.  As a general rule, two or more

businesses can be held liable for violations of the ADEA under the "joint

employer" theory of recovery.  Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d

1236, 1244 (11th Cir. 1998).  This theory focuses "on the degree of control an

entity has over the adverse employment decision on which the [ADEA] suit is

based."  Id. at 1244-45.

After reviewing Plaintiff's allegations, the Court agrees with the Magistrate

Judge that Plaintiff failed to allege sufficient facts to show that StackPath was a

mere agent or instrumentality of ABRY Partners.  While Plaintiff did allege that

"[o]n information and belief, Defendant ABRY Partners exercises extensive

control over Defendant StackPath such that Defendant StackPath acted as the mere

agent and instrumentality of Defendant ABRY Partners when it terminated

Plaintiff," [Doc. 23, p. 11], this allegation is nothing more than a "bare assertion" or a "formulaic recitation" of an element, <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007). A wholly legal conclusion like this need not, and will not, be considered by the Court. See <u>Twombly</u>, 550 U.S. at 557.

Setting the above legal conclusion aside and turning to the remaining allegations, the Court finds that Plaintiff failed to plead enough facts to show that ABRY Partners controlled StackPath to such an extent that StackPath was the mere agent and instrumentality of ABRY Partners. Plaintiff's limited factual assertions show that ABRY Partners did not control the employment relationship. For instance, Plaintiff alleges that it was StackPath who identified him as an employee that should be replaced with a younger worker and StackPath who fired him. Significantly, Plaintiff admits that this was done not at the direction of ABRY Partners but rather only with the "knowledge and approval" of ABRY Partners. [Doc. 23, p. 12].[3] Moreover, Plaintiff never alleges that ABRY Partners was his

---

[3] In his objection, Plaintiff directs the Court to other allegations which he claims support his "joint employer" theory. More specifically, he cites to paragraphs 6, 45, 46, 49 and 80 of his Second Amended Complaint. Notably, none of these allegations were asserted under the ADEA cause of action. Pleading in this manner (where the Court has to guess which factual allegations may apply to which cause of action) is improper and creates confusion for the Court. Any allegations that are relevant to Plaintiff's ADEA claim should have been clearly linked to that cause of action rather than sprinkled throughout the Second Amended Complaint. Nevertheless, the Court has considered the allegations and finds that the allegations are insufficient to show that ABRY Partners controlled

employer and even asserts elsewhere in his pleadings that ABRY Partners was "a stranger to Plaintiff's employment relationship." Id. at 15.  At bottom, Plaintiff's allegations are insufficient to show that ABRY Partners was Plaintiff's employer or that StackPath was a mere agent of ABRY Partners, and therefore Plaintiff's objection is **OVERRULED**.

    b.  Turco

In his second objection, Plaintiff concedes that an ADEA claim cannot be brought against Turco in his individual capacity.  Plaintiff, however, seeks confirmation that Turco remains a defendant in his corporate capacity as an "agent" of StackPath.

The ADEA defines "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year" and provides that the term "employer" also includes any agent of an employer.  29 U.S.C. § 630(b).  While "agent" is included in the ADEA's definition of "employer," the Eleventh Circuit Court of Appeals has held that the "agent" language was included in the ADEA to ensure "*respondeat superior* liability of the

---

StackPath to such an extent that StackPath was the mere agent and instrumentality of ABRY Partners.

employer for the acts of its agents." <u>Mason v. Stallings</u>, 82 F.3d 1007, 1009 (11th Cir. 1996); <u>see also</u> <u>Birkbeck v. Marvel Lighting Corp.</u>, 30 F.3d 507, 510-11 (4th Cir. 1994) (holding that the "any agent" language in the ADEA is "an unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability for the employer" and that ADEA liability is limited to the plaintiff's employer).

Because the agent language merely provides for *respondeat superior* liability, a suit against an agent of an employer is, in actuality, a suit directly against the employer.  <u>See</u> <u>Parsons v. Nationwide Mut. Ins. Co.</u>, 889 F. Supp. 465, 468 (M.D. Fla. 1995) (recognizing that "agents of employers who violate Title VII provisions only trigger an action against the employer, and not an action against the individual agent/employee").  Here, Plaintiff has brought identical claims against Turco in his corporate capacity and against StackPath.  Because the claims are the functional equivalent of each other, the claim against Turco in his corporate capacity is subject to dismissal as duplicative.  <u>See</u> <u>Hill v. City of Atlanta</u>, No. 1:15-CV-01421, 2016 WL 11586947, at *4 (N.D. Ga. Mar. 29, 2016) (dismissing claims against police officers in their official capacity as duplicative when claims were also brought against the city); <u>see also</u> <u>Busby v. City of Orlando</u>, 931 F.2d 764, 772 (11th Cir. 1991) (stating that "the proper method for a plaintiff to recover,

. . . is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly"). At bottom, Plaintiff already has a viable claim against StackPath and therefore does not also need to bring suit against Turco in his corporate capacity as StackPath's agent. Accordingly, the Court clarifies that the claims asserted against Turco, both in his corporate and individual capacity, are **DISMISSED**.

3. <u>Objection Three: Intentional Interference with Employment</u>

In the Second Amended Complaint, Plaintiff contends that ABRY Partners intentionally and wrongfully interfered with his employment with StackPath. In Georgia, to state a claim for tortious interference with employment, a plaintiff must allege: "(1) the existence of an employment relationship; (2) interference by one who is a 'stranger' to the relationship; and (3) resulting damage to the employment relationship." <u>Lee v. Caterpillar, Inc.</u>, 496 F. App'x 914, 915 (11th Cir. 2012). In Plaintiff's objection, he contends that the Magistrate Judge erred by concluding that ABRY Partners was not a stranger to the employment relationship.[4]

"In tortious interference cases, the term 'stranger' has been interpreted broadly by Georgia courts." <u>Id.</u> In fact, one is not a stranger to an employment

---

[4] Plaintiff's position that ABRY Partners is a "stranger to the employment relationship" seems inconsistent because Plaintiff also contends, in the context of his ADEA claim, that ABRY Partners was his employer.

relationship simply because it is not a party to the employment contract.  Id.
Indeed, "[t]hose who have a direct economic interest in or would benefit from a
contract with which they are alleged to have interfered . . . are not strangers to the
contract and cannot have tortiously interfered."  Mabra v. SF, Inc., 728 S.E.2d 737,
740 (Ga. Ct. App. 2012).

Plaintiff alleges in his Second Amended Complaint that "ABRY Partners,
LLC was a stranger to Plaintiff's employment relationship" with StackPath.  [Doc.
23, p. 15].  This allegation, however, is merely a conclusory statement regarding an
element of the tortious interference with employment standard—precisely the kind
of allegation that Iqbal directs courts to ignore.  Significantly, Plaintiff failed to
allege any facts to support this legal conclusion.  To the contrary, the factual
allegations in the Second Amended Complaint show that ABRY Partners was not a
stranger to the contract.  Plaintiff himself alleges that ABRY Partners had a
financial interest, directly or through one of its subsidiaries, in StackPath.  Id. at 3.
Plaintiff also alleges that ABRY Partners held an ownership interest in StackPath
and had always maintained a seat on StackPath's board of directors.  Id. at 10.
Lastly, Plaintiff contends that he was fired to enhance ABRY Partners' "own
financial advantage."  Id. at 19.  At the very least, these allegations show that
ABRY Partners had a financial interest in or benefitted from the contract at issue,

Case 1:21-cv-03763-JPB-CMS   Document 32   Filed 07/15/22   Page 12 of 16

and therefore ABRY Partners was not a stranger to the business relationship. Certainly, the allegations show that ABRY Partners had more than an "incidental" interest in Plaintiff's contract.  As such, this Court finds that Plaintiff's objection is without merit and is thus **OVERRULED**.

   4.  <u>Objection Four:  Intentional Interference with Contract</u>

     In this case, Plaintiff alleges that he had a contract (the "Equity Incentive Agreement") with StackPath Incentive, LLC ("StackPath Incentive").  According to Plaintiff, StackPath Incentive is an affiliate of StackPath and "was formed in order to hold a member interest in [StackPath], and grant employees of [StackPath] participation in the value of the StackPath equity interest under certain conditions." [Doc. 23, p. 17].  Essentially, Plaintiff asserts that the Equity Incentive Agreement gave him the right to StackPath stock if StackPath were sold.  Significantly, the Equity Incentive Agreement automatically terminated if Plaintiff's employment ended.  <u>Id.</u> at 17, 19.  Here, Plaintiff alleges that Defendants intentionally interfered with his contract with StackPath Incentive when they terminated his employment.

     The Magistrate Judge recommended granting the Motion to Dismiss because Plaintiff failed to allege that StackPath Incentive actually breached the Equity Incentive Agreement.  More specifically, the Magistrate Judge concluded that

because StackPath Incentive did not breach the contract (rather, the contract automatically terminated when Plaintiff's employment ended), a cause of action for intentional interference with contract could not survive. In his fourth objection, Plaintiff argues that the Magistrate Judge erred because Georgia law does not require a breach of contract to state a claim for intentional interference with contract.

In Georgia, to state a claim for intentional interference with contract, a plaintiff must allege:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a party or third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

Culpepper v. Thompson, 562 S.E.2d 837, 840 (Ga. Ct. App. 2002).

Assuming without deciding that Plaintiff is correct that he need not allege a breach of contract for his claim to survive, Plaintiff's claim is still subject to dismissal because Plaintiff fails to satisfy the first element, which states that a plaintiff must show improper action or wrongful conduct by a defendant *without privilege*.

"To establish that the tortfeasor acted *without* privilege, a plaintiff must show that the alleged tortfeasor is a third party or a stranger to the contract or business relation at issue." Healthy-IT, LLC v. Agrawal, 808 S.E.2d 876, 885 (Ga. Ct. App. 2017). To determine if a defendant may be classified as a "stranger," a court should analyze whether "a defendant has a financial interest" or a "legitimate economic interest in either the contract or a party to the contract." Id. If the Court concludes that a defendant does have an interest of this nature, the defendant cannot be classified as a stranger. Id. Thus, under this rule, the Court must decide whether Defendants have an economic or financial interest in one of the following: the Equity Incentive Agreement, Plaintiff or StackPath Incentive.

Defendants are not strangers to the contract between StackPath Incentive and Plaintiff because all have an economic or financial interest in the Equity Incentive Agreement and/or Plaintiff's employment. As to StackPath, Plaintiff concedes that StackPath Incentive is an affiliate of StackPath. Plaintiff also admits that StackPath Incentive was formed to hold a member interest in StackPath and to grant StackPath employees participation in the value of StackPath equity interests under certain conditions. In other words, the business relationship giving rise to the Equity Incentive Agreement is Plaintiff's employment with StackPath. Under these facts, StackPath is not a stranger to the contract between StackPath Incentive

and Plaintiff.  In regard to Plaintiff's claim against Turco, Turco was the CEO of StackPath when Plaintiff's employment was terminated.  As the acting CEO, Turco was not a stranger to the contract between StackPath Incentive and Plaintiff. Finally, as to ABRY Partners, the Court already explained in the previous section of this Order why ABRY Partners is not a stranger to Plaintiff's employment contract.  For these same reasons, ABRY Partners is not a stranger to the Equity Incentive Agreement.

Ultimately, aside from making a conclusory statement designating Defendants as strangers to the contract, Plaintiff's allegations are insufficient to show that Defendants are, in fact, strangers to the Equity Incentive Agreement. Accordingly, this Court agrees with the Magistrate Judge's recommendation, although founded on the additional ground identified herein, and Plaintiff's objection is **OVERRULED**.

5. <u>Objection Five:  Conspiracy</u>

In his final cause of action, Plaintiff asserts a conspiracy claim against Defendants wherein he alleges that Defendants conspired to tortiously interfere with Plaintiff's contractual rights under the Equity Incentive Agreement.

In recommending dismissal, the Magistrate Judge correctly stated that "[c]ivil conspiracy is not an independent cause of action" and "there must be an

underlying wrong on which the conspiracy claim is based." <u>Nance v. Maxwell Fed. Credit Union (MAX)</u>, 186 F.3d 1338, 1342 (11th Cir. 1999). The Magistrate Judge also correctly recognized that a conspiracy claim cannot be based on a violation of the ADEA. In his objection, Plaintiff contends that the conspiracy claim should not be dismissed because his tortious interference with contract claim should not be dismissed. As already explained above, however, the tortious interference with contract claim is subject to dismissal. As such, Plaintiff's objection is **OVERRULED**.

**CONCLUSION**

After reviewing the entirety of the Non-Final Report and Recommendation and considering Plaintiff's objections, the Non-Final Report and Recommendation is **ADOPTED** as the order of this Court. For the reasons stated by the Magistrate Judge, Defendants' Motion to Dismiss [Doc. 13] is **GRANTED**. The Clerk is **DIRECTED** to return this matter to the Magistrate Judge for further proceedings.

**SO ORDERED** this 15th day of July, 2022.